IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN JOHNSON,                                    CV 03-345-MA

               Petitioner,                    OPINION AND ORDER

    v.

JAMES BARTLETT,

               Respondent.


     TONIA L. MORO
     Assistant Federal Public Defender
     15 Newton Street
     Medford, OR  97501

         Attorney for Petitioner

     HARDY MEYERS
     Attorney General
     DOUGLAS Y.S. PARK
     Assistant Attorney General
     Department of Justice
     975 Oak Street, Suite 480
     Eugene, OR  97401

         Attorneys for Respondent

MARSH, Judge:

    Petitioner, an inmate in the custody of the Oregon

Department of Corrections, brings this habeas corpus proceeding

pursuant to 28 U.S.C. § 2254.  For the reasons set forth below,

petitioner's amended habeas corpus petition (#64) is denied.


1 - OPINION AND ORDER

## FACTUAL BACKGROUND

Following a jury trial, on June 19, 1994, petitioner was convicted of Burglary in the First Degree (two counts) and Rape in the First Degree (two counts).  He was sentenced to 144 months imprisonment on the merged Burglary convictions and to consecutive 72-month sentences on each of the Rape convictions, for a total of 288 months imprisonment.  Resp. Ex. 101.

The victim was 55 year-old Norma Eason, who lived alone in North Portland.  She encountered petitioner in the hallway of her home after hearing a loud crashing sound.  Petitioner told Eason not to look at his face and she obeyed him.  He took her to her bed and covered her head with a blanket while he rummaged through her bedroom.  He then raped her.  Eason told petitioner she was thirsty so he allowed her to go to the bathroom with a robe over her head, again warning her not to look at his face.  Petitioner recommenced rummaging through Eason's belongings.  After 15 or 20 minutes he ordered Eason to get on her hands and knees on the bed and he raped her again.  All told, petitioner was in Eason's home for approximately one hour.

Eason went to the hospital to provide evidence for a rape kit.  She was interviewed by a detective at the hospital.  Though she admitted not getting a clear look at his face, Eason described petitioner as a medium-skinned black man about 6'2" and

185 pounds.  She also remembered that he had a distinctive voice and that he spoke "very, very proper English" and sounded "very educated."

Around the time of this incident, a string of residential burglaries took place in Eason's neighborhood, where petitioner also lived.  Investigators noted similarities between these burglaries and the crimes committed against Eason.  In September, 1991 the district attorney's office called Eason to inform her of the "possibility" that a man who faced sentencing for one of these burglaries might also be her assailant.  Accordingly, Eason attended the sentencing and sat in the back of the courtroom. When she saw petitioner, Eason believed him to be her assailant from the way he moved, and his face registered a look of recognition upon seeing her.  However, Eason did not hear petitioner speak during that hearing so she was not positive he was her assailant.

On June 11, 1992, Officer Miller submitted an application for a search warrant to search petitioner's residence and to obtain blood and saliva samples.  Res. Ex. 114.  He stated that Eason believed petitioner to be her assailant after she attended his sentencing hearing in September, 1991.  Id. at 4.  Officer Miller also discussed similarities between the crime committed on Eason and the five other burglaries in Eason's neighborhood, and

the direct evidence linking petitioner to two of these
burglaries, in support of his belief that petitioner was Eason's
assailant.

Petitioner challenged the affidavit at pre-trial, arguing
that it contained numerous inaccuracies, such as the statement
that Eason believed petitioner to be the perpetrator after seeing
him at the September, 1991 sentencing hearing.  The court found
insufficient evidence to prove that Officer Miller's statement as
to Eason's belief was inaccurate.  After excising other
statements in the affidavit it found to be misleading, the court
determined that probable cause remained to believe that
petitioner raped and burglarized Eason.  Thus, the court denied
petitioner's motion to suppress DNA evidence obtained from
petitioner's blood sample, which matched the DNA found in Eason's
body after the rape.

Nevertheless, the court granted petitioner's motion to
suppress Eason's out-of-court identification from the September,
1991 sentencing hearing on the basis that it was impermissibly
suggestive.  Resp. Ex. 112.  However, the court allowed Eason to
make an in-court identification under the condition that she
could not use the information she obtained at the sentencing
hearing.  At trial, Eason testified that she had had an
opportunity to hear petitioner's voice the day before and it was

the same voice as the man who raped her.  Then, over the
objection of defense counsel, the prosecutor directed petitioner
to say, "I could hurt you," and "Don't look at my face."  Eason
again stated that petitioner's voice was the same voice as her
assailant.

### PROCEDURAL BACKGROUND

On direct appeal, the Oregon Court of Appeals affirmed
petitioner's convictions but remanded his case for re-sentencing
pursuant to the state's concession of error on sentencing issues;
the Oregon Supreme Court then denied review.  State v. Johnson,
156 Or. App. 100 (1998), rev. denied, 328 Or. 293 (1999).

Petitioner filed for post-conviction relief (PCR) on April
12, 2000, in Malheur County Circuit Court, Case No. 0004220M.
Resp. Ex. 108.  The PCR court issued an order giving petitioner
until July 25, 2000, to file any formal or amended PCR petitions.
Petitioner did not do so.  However, sometime after December 5,
2000, petitioner sent the PCR court a motion to amend and a
proposed amended PCR petition.  Resp. Ex. 125.  Nevertheless,
since petitioner did not bring to the PCR court's attention his
motion to amend at the time of his PCR trial on March 6, 2001,
his case proceeded on the claims alleged in this original PCR
petition, and argued in his supporting memorandum.  Resp. Ex.

108, 112.  The PCR trial court denied relief on all of
petitioner's claims.  Resp. Exs. 122, 123.

The Oregon Court of Appeals affirmed the trial court without
opinion, and the Oregon Supreme Court denied review.  <u>Johnson v.
Lampert</u>, 183 Or. App. 533 (2002), rev. denied, 335 Or. 255
(2003).

On March 19, 2003, petitioner filed for habeas corpus relief
with this court, and on July 25, 2005, he filed an amended
petition.  Docs. # 1, 64.  In his amended petition, petitioner
raises the following four grounds for relief:

> **Ground One**:  Mr. Johnson's conviction violates the
> Fifth and Fourteenth amendments because it is based on
> the introduction of unlawfully obtained DNA evidence.
>
> **Ground Two**:  Mr. Johnson was denied his Sixth and
> Fourteenth Amendment rights to effective assistance of
> counsel as a result of his attorney's failure to move
> to exclude the DNA and blood sample evidence because it
> derived from the unlawful suggestive identification.
>
> **Ground Three**:  Mr. Johnson's conviction violates the
> Fifth and Fourteenth amendments because it is based on
> the introduction of unlawfully obtained in-court
> identification.
>
> **Ground Four**:  Mr. Johnson was denied his Sixth and
> Fourteenth Amendment rights to effective assistance of
> counsel as a result of his attorney's failure to
> properly and adequately move and prosecute the motion
> to exclude the victim's in-court identification because
> it derived from the unlawful suggestive identification.

Doc. # 64.

Respondent moves this court to deny relief on grounds one and four on the basis they are procedurally defaulted, and grounds two and three on the merits.  For the reasons that follow, the amended habeas corpus petition is denied.

## DISCUSSION

I.    **Procedural Default**

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  See 28 U.S.C. § 2254(b)(1).  A petitioner must seek discretionary review in the state's highest court in order to fully exhaust his state remedies.  O'Sullivan v. Boerekel, 526 U.S. 838 (1999).

To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to the state courts.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 911 (9th Cir. 2004).  A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal."  Baldwin, 541 U.S. at 32; Gray v. Netherland, 518 U.S. 152, 162-63 (1996).  It is not enough that all the facts necessary to support the federal claim were

available to the state courts, or that somewhat similar claims were made.  <u>Anderson v. Harless</u>, 459 U.S. 4, 6, (1982).

Petitioners must have also presented their federal claims to the state courts in a procedural context in which the merits of the claim will be considered.  <u>Castille v. Peoples</u>, 489 U.S. 346, 351-52 (1989)(claim not fairly presented when raised for the first time on petition for review to state Supreme Court).

**A.   Ground One**

In ground one, petitioner asserts that his conviction violates the Fifth and Fourteenth Amendments because it is based on the introduction of unlawfully obtained DNA evidence. According to petitioner, the trial court should have suppressed the DNA evidence because it was the fruit of Eason's impermissibly suggestive out-of-court identification.  Without it, the warrant application does not support a search for a blood sample, according to petitioner, because no biological evidence was found at any of the other crime scenes.  He also contends the state failed to prove DNA evidence could have been obtained vis-a-vis an independent source.

Respondent contends relief under petitioner's ground one should be denied either because it is a Fourth Amendment claim,

not cognizable under habeas corpus[1], or because it is a defaulted due process claim. For the reasons that follow I agree with respondent that ground one is a defaulted due process claim.

According to petitioner, he raised his ground one claim in his appellate brief by citing to Wong Sun v. United States, 371 U.S. 471 (1963)(announcing the exclusionary rule as a remedy for due process violations), under "his first, fourth and fifth assignments of error that presented, either independently or cumulatively, the first claim here." Doc. 77 at 10. Petitioner argues that under Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003)(en banc), referencing either a federal or state case that analyzes the federal violation is sufficient to present a federal question to the state courts. Id.

"Assignment of Error No 1" states that the trial court "erred in denying defendant's pretrial motion to suppress the eyewitness identification, including the presentation of eyewitness identification at trial." Resp. Ex. 102 at 38. In support of this claim petitioner argued:

> The United States Supreme Court has recognized that suggestive identification procedures can violate defendant's

---

[1] See Stone v. Powell, 428 U.S. 465, 494 (1976)("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.")

right to a fair trial.  Beginning in 1967 with <u>Wade</u>,
<u>Gilbert</u>, and <u>Stovall</u>, the Supreme Court began formulating
rules to determine when suggestive identification procedures
violate standards of *due process under the Fourteenth
Amendment*.  The federal cases therefore set a due process
standard which state rules concerning the admissibility of
identification evidence must meet.

<u>Id</u>. at 41-42(emphasis added).  Petitioner also cited <u>Wong Sun</u> in

support of the statement that "Evidence obtained as a result of a

violation of defendant's constitutional rights must be

suppressed."  Resp. Ex. 102 at 43.

"Assignment of Error No 4" states that the trial court erred

"in denying defendant's motion to controvert," or that "certain

information should have been deleted from the affidavit in

determining whether or not there exists probable cause to search

defendant's residence and seize defendant's blood."  <u>Id</u>. at 57,

60.  In support of this claim defendant argued:

Evidence obtained in violation of defendant's rights cannot
serve as the basis of obtaining other evidence against him.
<u>Wong Sun</u>, (announcing fruit of the poisonous tree doctrine).
In this case, the out of court identification of defendant
was suppressed.  The basis for the suppression is that the
identification is unduly suggestive which violates
defendant's *due process rights*.  <u>Wade</u>, <u>Gilbert</u>, <u>Classen</u>.
The evidence is too unreliable to present to the fact
finder.  The same unreliable evidence cannot serve as the
basis of a finding of probable cause.

Resp. Ex. 102 at 62 (emphasis added).

Finally, "Assignment of Error No 5" states that the trial

court erred "in denying defendant's motion to suppress evidence

seized under authority of the warrant for the search of his

residence and the seizure of blood from the person."  In support

of this claim defendant stated that the "Applicable law is

statutory, ORS 133.545 and 133.555, and constitutional, Or Const

Art I, Sec 9 and US Const Amend IV."  Resp. Ex. 102 at 66.  He

argued:

> The key factor in the court's decision that the affidavit in
> this case establishes probable cause is the statement of Ms.
> Eason that she believes defendant is the person.  As
> explained above, defendant argues that the statement should
> have been stricken from the affidavit.  The affidavit
> without that statement establishes only suspicion.  The
> evidence seized under the warrant, including the blood draw
> from defendant, must be suppressed.
>
> The same affidavit was used for the second blood draw on
> defendant.  For the reasons set out above, the evidence
> obtained as a result of that blood draw must also be
> suppressed.

Resp. Ex. 102 at 67.

Respondent contends that the issue of the DNA evidence was

only raised in petitioner's fifth assignment of error, and there

he did not cite to the Fifth of Fourteenth Amendment, or use the

term "due process."  Thus, according to respondent, even if

petitioner's instant ground one could be read as a due process

claim, petitioner did not fairly present it as one to the Oregon

Court of Appeals.[2]  I agree.

---

[2] Respondent also correctly points out that the Fifth
Amendment's Due Process Clause does not apply to the states.  See
Castillo v. McFadden, 399 F.3d 993, 1002 n. 5 (9th Cir.
2005)(noting that the Fifth Amendment's Due Process Clause
prohibits the federal government from depriving persons of due
process of law).

Petitioner's first and fourth assignments of error were clearly premised upon the due process clause.  However, contrary to petitioner's contention that his fifth assignment of error was also premised upon the due process clause by virtue of the extension of the "fruit of the poisonous tree" doctrine under Wong Sun, no such argument was raised to the Oregon Court of Appeals.  Instead, the only federal law petitioner cited in his fifth assignment of error was the Fourth Amendment.  See Resp. Ex. 102 at 66.  Similarly, petitioner's citations to federal law allegedly alerting the state courts to the federal due process issue are contained in his first and fifth assignments only[3].  In his fifth assignment petitioner cites only state cases discussing the probable cause standard.  Thus, I cannot find that

---

[3] See Resp. Ex. 102 at 42, 44 (citing Stovall v. Denno, 388 U.S. 293 (1967)(holding defendant's Fourteenth Amendment due process rights were not violated by being brought to hospital for victim to identify him); Foster v. California, 394 U.S. 440 (1969)(dissent holding that line-up identification was impermissibly suggestive so as to violate due process); Neil v. Biggers, 409 U.S. 188 (1972)(stating suggestive identification procedures violate due process because of the likelihood of misidentification); Mason v. Braithwait, 432 U.S. 98 (1977)(holding the due process clause does not compel exclusion of reliable identification evidence); Nix v. Williams, 467 U.S. 431 (1984)(Fourteenth Amendment mentioned in relation to Sixth Amendment right to counsel extending to states); Wong Sun v. United States, 371 U.S. 471 (1963)(no reference to "due process" or Fourteenth Amendment); United States v. Wade, 388 U.S. 218, 249 (1967)(Fourteenth Amendment due process clause referenced only in dissent); Gilbert v. California, 388 U.S. 263, 267(1967)(referencing petitioner's due process claim without analyzing it)).

petitioner's citation to federal cases was sufficient under
Peterson to have presented a due process claim in a procedural
context in which the appellate courts would have considered it.

In Peterson, the court held that a habeas petitioner's
citation, on direct review, to a state case analyzing a federal
constitutional issue serves the same purpose as referencing a
federal case analyzing the same issue.  Id. at 1158.
Nevertheless, the court in Peterson held that petitioner failed
to exhaust his federal ineffective assistance claim
notwithstanding citation to two state cases analyzing the right
to counsel under the state and federal Constitutions because he
preceded these citations with an allegation of "inadequate"
assistance of counsel under the Oregon Constitution, which is
"the usual term referring to the state version of the
constitutional right," and did not allege "ineffective"
assistance of counsel, which is the term usually used to refer to
the federal version.  Id. at 1157-59.  The court reasoned that
"the clear language used in Peterson's counseled petition leads
us to conclude he made a deliberate, strategic choice not to
present the federal issue in his petition."  Id. at 1159; cf.
Duncan v. Henry, 513 U.S. 364, 366 (1995)("[M]ere similarity of
claims is insufficient to exhaust"); Kimmelman v. Morrison, 477
U.S. 365, 374 & n. 1 (1986)(distinguishing between a Fourth

Amendment suppression claim and a Sixth Amendment ineffective assistance claim).

I find the same to be true here, where petitioner's counseled appellate brief could have easily premised assignment five on the due process clause or re-referenced federal cases analyzing due process, just as he did under assignment four after initially referencing them in assignment one.  While admittedly related, these assignments presented distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts. Instead, it appears counsel made a tactical decision to argue under the fifth assignment only that the trial court wrongly denied petitioner's motion to suppress seized evidence. Accordingly, petitioner's ground one is procedurally defaulted.

**B.    Ground Four**

In petitioner's ground four he alleges trial counsel performed ineffectively, in violation of his Sixth and Fourteenth Amendment rights, by failing to (i) apply the appropriate standard when attempting to exclude the victim's in-court identification of petitioner, and (ii) properly impeach the victim when attempting to suppress her in-court identification. Doc. 64 at 4.

I.   **Part One**

According to respondent, part one of petitioner's ground four – that counsel failed to apply the appropriate standard in attempting to exclude Eason's in-court identification – was not properly presented to the PCR trial court because there he did not argue that the "appropriate standard" trial counsel should have applied was the five factor test[4] from Manson v. Braithwait, 432 U.S. 98 (1977); Resp. Exs. 108, 112, 102 at 46.  Neither did petitioner mention Braithwait in his PCR memorandum to the Oregon Court of Appeals, or in his petition for review to the Oregon Supreme Court.  Resp. Exs. 124, 127.

Petitioner argues that under United States v. Pallares-Galan, 359 F.3d 1088, 1094 (9th Cir. 2004), he was not required to cite the Braithwait test on collateral review because it is simply an alternative argument, not a claim.  I need not decide this issue, however, because I find petitioner failed to even allege to the PCR court that counsel was ineffective for failing to move to exclude Eason's in-court identification, much less

_____

[4] The five factors bearing on the probable reliability of an identification despite the use of a suggestive procedure are: (1) the witness' opportunity to get a clear view of the perpetrator; (2) the attention the witness gave to the perpetrator's features; (3) the timing and completeness of the description the witness gave after the events; (4) the certainty the witness expressed in her prior description and subsequent identification; and (5) the lapse of time between the original observation and the subsequent identification.  Braithwait, 432 U.S. at 232-233.

that she failed to apply the appropriate standard in so doing.
Doc. 77 at 18.

In his PCR petition he claimed: (1) trial counsel failed to
argue that the state was required to demonstrate that evidence
was purged of the taint of the suggestive procedure (Resp. Ex.
108 at 3); (2) "Trial Counsel failed to make or adequately to
preserve timely and appropriate objections to the introduction of
inadmissible evidence before and at trial" (Id. at 5); and,
(3) "Trial Counsel failed properly to contradict or discredit
damaging evidence presented by the state." (Id. at 6).  In his
accompanying memorandum petitioner argued that counsel was
ineffective for failing to impeach Eason regarding her
opportunity and ability to identify petitioner (ground four, part
two), but he does not allege or argue that trial counsel should
have moved to exclude Eason's entire in-court identification.
Resp. Ex. 112 at 10.

Although there is no bright line test for fair presentation,
certainly habeas petitioners must plead their claims with more
specificity than petitioner did here to satisfy the exhaustion
requirement.  While he adequately referenced the federal
constitutional provisions that would entitle him to relief under
an ineffective assistance of counsel claim, petitioner did not
state in his PCR trial court petition or memorandum the operative
facts upon which ground four, part one relies.  Even though the

record contained facts that potentially support his instant claim
that counsel should have moved to exclude Eason's in-court
identification, the PCR court could not be expected to guess that
by "inadmissible evidence" or "damaging evidence" petitioner
meant Eason's in-court identification.  Accordingly, petitioner's
ground four, part one is procedurally defaulted.

     **I.   Part Two**

    Respondent avers that part two of petitioner's ground four –
that defense counsel was ineffective because she failed to
properly impeach Eason's pre-trial motion testimony regarding her
ability to identify petitioner – is also defaulted because
petitioner did not raise it in his PRC petition, even if he did
argue it in his memorandum to the PCR trial court.  Resp. Exs.
108, 112 at 32-40.  Respondent correctly contends that under
Oregon law only the issues presented in the PCR petition are
properly before the PCR court.  See ORS 138.550(3)("All grounds
for relief claimed by petitioner in a [habeas] petition...must be
asserted in the original or amended petition, and any grounds not
so asserted are deemed waived unless the court on hearing a
subsequent petition finds grounds for relief asserted therein
which could not reasonably have been raised in the original or
amended petition.").  Thus, according to respondent, petitioner
did not present ground four, part two in a procedural context in
which Oregon's highest court would have considered it.

Petitioner contends he did raise part two in his PCR petition, where he stated, "Trial counsel failed properly to contradict or discredit damaging evidence presented by the state." Resp. Ex. 108 at 6. However, this argument suffers from the same infirmity as the preceding one. This language was not sufficiently specific to have fairly presented the claim that trial counsel failed to properly impeach Eason's pre-trial motion testimony regarding her ability to identify petitioner. The PCR court could not be expected to guess that by "damaging evidence" petitioner meant Eason's pre-trial motion testimony. Accordingly, petitioner's ground four, part two is also procedurally defaulted.

## II. Merits

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's determination of a factual issue "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  Petitioner carries the burden of rebutting this presumption of correctness by clear and convincing evidence.  Id.

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003).  A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Williams v. Taylor, 529 U.S. 362, 409.

A state court decision can be overturned for legal error only if the state court's application of Supreme Court case law was "objectively unreasonable."  Penry v. Johnson, 532 U.S. 782, 793 (2001).  Federal courts "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004).

**A.    Ground Two**

Petitioner's ground two is closely related to ground one. In ground two, petitioner alleges trial counsel performed ineffectively, in violation of his Sixth and Fourteenth Amendment rights, by failing to renew her motion to exclude DNA evidence obtained pursuant to the allegedly invalid warrant after the court suppressed Eason's out-of-court identification.  Counsel did move to exclude this evidence before the court ruled that the out-of-court identification was impermissibly suggestive and must be suppressed.  However, petitioner contends counsel should have renewed the motion to suppress DNA evidence because it was the fruit of that tainted out-of-court identification, and without it the warrant application lacked probable cause to believe petitioner raped Eason.

Respondent argues petitioner's ground two should be denied because the state court decision denying relief on this basis was neither contrary to, nor an unreasonable application of, the ineffective-counsel standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1987).

In order to prevail on a claim of ineffective assistance of counsel, petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529
U.S. 362, 390-91 (2000); Strickland, 466 U.S. at 687-88.

Proof of prejudice, in this context, requires a showing
that, but for counsel's unprofessional errors, there is a
reasonable probability that the DNA evidence would have been
suppressed and the outcome of the trial would have been
different.  See Shackleford v. Hubbard, 234 F.3d 1072, 1080 (9th
Cir.) cert. denied 534 U.S. 944 (2001); Lowry v. Lewis, 21 F.3d
344, 346-47 (9th Cir.), cert. denied, 513 U.S. 1001 (1994);
Viallafuerte v. Stewart, 111 F.3d 616, 631 (9th Cir.), cert.
denied, 522 U.S. 1079 (1998).

The PCR trial court in this case made the following factual
findings relevant to the effectiveness of counsel:

1.  Trial counsel was constitutionally adequate.

2.  Trial counsel made numerous motions and objections,
including a motion for an in camera inspection of the
diary, a motion to controvert regarding the search
warrant affidavit, a motion to suppress evidence in the
case, and a motion for a Brown hearing to challenge the
DNA evidence.  Trial counsel objected to all of the
damaging evidence presented against Petitioner.
Petitioner raised these claims on direct appeal.

3.  Trial counsel moved for a Brown hearing to test the
admissibility of the DNA evidence.  However, the court
denied the pretrial hearing.  This issue was raised on
direct appeal.

4.  Dr. Bradley Wayne Popovich was hired by trial
counsel on behalf of the defendant and was a DNA expert
from Oregon Health Sciences University.  Trial counsel
was adequate in hiring a DNA expert.

6.  The DNA laboratory was compliant with all relevant qualifications to perform DNA testing in Petitioner's case.

7.  Trial counsel raised the chain of custody objection to the DNA evidence at trial.  Petitioner raised the chain of custody issue on direct appeal.

8.  Petitioner is one of 2 billion people with the DNA that was found in the victim's body.

*** 

9.  Petitioner failed to prove all of his claims by a preponderance of the evidence.

Resp. Ex. 122 at 6-7.

Based on these findings, the PCR court made the following conclusions of law:

1.  Based on the findings of fact set forth above, in the underlying criminal proceeding resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

*** 

2.  Petitioner failed to prove his claims by a preponderance of the evidence.

Id. at 7-8.

Petitioner has not rebutted by clear and convincing evidence the PCR trial court's factual findings, nor shown that the PCR court's conclusions were either contrary to, or an unreasonable application of Strickland.  In particular, petitioner cannot show he was prejudiced by counsel's failure to renew her objection to

the DNA evidence because there is no reason to believe such an objection would have been meritorious.

Under petitioner's theory, for the objection to be granted and the DNA evidence suppressed, the trial court would have had to find that without Eason's allegedly tainted statement that she believed petitioner to be her assailant, the warrant affidavit was lacking in probable cause to believe petitioner raped Eason. Petitioner contends that without Eason's statement, the remaining evidence in the affidavit establishes only a "suspicion that two black men were burglarizing the 'neighborhood,'" and in any event, of the two men described by eye-witnesses the description that best fits petitioner shows he did not try to disguise his identity.  Doc. #77 at 15-16.

A careful review of the affidavit, however, reveals striking similarities between eye-witness descriptions of the assailants and petitioner, the methods of entry, the time of day the crimes were perpetrated, the type of dwellings burglarized, and the items taken, and on two occasions, assault of the occupants.

The affidavit establishes the following: (1) with the exception of one incident, each time the perpetrator(s) forced entry into an occupied single family dwelling at night by breaking a door; (2) petitioner is a black man of medium skin tone, approximately 5 feet 11 inches and 180 pounds; (3) petitioner is a soft-spoken man; (4) Eason's assailant took

several pieces of jewelry including a gold wedding band with a
cluster of diamonds, a pearl necklace, pre-1964 silver coins and
19th century silver dollars; (5) one of the two assailants of
6716 North Congress Avenue, described as approximately 6 feet
tall and between 160 and 170 pounds, assaulted the occupant, and
a man's gold-colored watch and a man's wallet were taken; (6) one
of the assailants of 6371 Northeast Garfield was approximately 6
feet tall and 180 pounds, and took a man's gold-colored watch, a
man's wallet and a VCR; (7) the lone assailant of 408 North
Bryant Street was a black man who took cash, and left a shoe
imprint on the residence's pile carpeting; (8) a lone black man,
between 5 feet 10 inches and 6 feet, and 185 pounds robbed 6736
North Haight Avenue at approximately 3:10pm, taking a man's brown
wallet and a woman's fake leather purse, both containing various
credit and identification cards; (9) on May 28, 1991, 6716 North
Congress was once again robbed by a lone black man who took a
Magnavox television and cash; (10) petitioner was arrested on May
28, 1991, a few hours after the 6716 North Congress Avenue
robbery; (11) credit cards taken from 6736 North Haight Avenue
were found on petitioner when he was arrested; (12) petitioner's
address at the time of his arrest was 7018 Northeast Mallory,
which lies within the geographic area of the burglaries; and,
(13) the shoe print found at 408 North Bryant Street was

consistent with the shoes worn by petitioner at the time of his arrest.

These facts support a finding that, more likely than not, petitioner burglarized and assaulted Eason.  Thus, there was no reasonable possibility that the DNA evidence would have been suppressed even without Eason's statement.  *Ergo*, is it not likely that the outcome of the trial would have been different.

Since petitioner has not shown he was prejudiced by counsel's failure to renew the motion to exclude DNA evidence, I need not decide whether counsel's performance fell below an objective standard of professionalism.  Accordingly, petitioner is not entitled to habeas corpus relief under ground two.

**B.   Ground Three**

Petitioner's ground three is closely related to ground four. In ground three, petitioner alleges his Fifth and Fourteenth Amendment rights were violated by Eason's in-court identification of petitioner because it was tainted by her out-of-court identification.

Respondent argues that for petitioner to be entitled to relief on ground three this court must first find that the DNA evidence should not have been admitted, because otherwise petitioner cannot show he was prejudiced by the in-court identification.

On collateral review, the harmless error analysis requires this court to consider whether admission of tainted evidence had substantial and injurious effect or influence in determining the jury's verdict.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993).  Thus, assuming, *arguendo*, that Eason's in-court identification was tainted by her impermissibly suggestive out-of-court identification, petitioner would still have to show it had a substantial and injurious effect on the outcome of his trial.

I agree with respondent that petitioner has not made such a showing.  To the contrary, in his sur-reply petitioner argues that the DNA evidence was the decisive factor in the jury's minds, not Eason's in-court identification, which "was hardly mentioned by the state in closing."  Doc. 77 at 17.  Accordingly, petitioner is not entitled to habeas corpus relief under ground three.

<u>**CONCLUSION**</u>

Based on the foregoing, petitioner's amended habeas corpus petition (#64) is denied.

IT IS SO ORDERED.

DATED this _20__ day of March, 2006.

        /s/  Malcolm F. Marsh
        Malcolm F. Marsh
        United States District Court Judge